UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PREFERRED CONTRACTORS INSURANCE COMPANY, RISK RETENTION GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>D & T DESIGN CONTRACTORS, LLC, et. al.,<br><br>Defendants. | Case No. 2:20-cv-01759-RFB-BNW<br><br>**ORDER** |

## I.     INTRODUCTION

Before the Court for consideration is Plaintiff Preferred Contractors Insurance Company, Risk Retention Group, LLC's Motion for Summary Judgment. ECF No. 25.

## II.     PROCEDURAL BACKGROUND

Plaintiff Preferred Contractors Insurance Company, Risk Retention Group, LLC ("PCIC") brings this action against Defendants D&T Design Contractors, LLC (D&T), Zhiqlang Weng, Yesina Millan, Cristal Simon, Gisele Simon, Jasmine Simon, and Victor Perez Bravo for declaratory relief regarding a dispute over coverage for an underlying lawsuit. Plaintiff filed suit in federal court on September 22, 2020. ECF No. 1. Defendants D&T, Zhiqlang Weng filed an answer on December 8, 2020 and an amended answer on December 10, 2020. ECF Nos. 15, 17. All other defendants filed an answer on December 23, 2020. ECF No. 18. A scheduling order was entered on January 26, 2021. ECF No. 20. On July 23, 2021, Plaintiffs filed a motion for summary

judgment. ECF No. 25. Defendants responded on August 13, 2021. ECF No. 27 and 28. Plaintiff replied on August 27, 2021. ECF No. 29.

On March 11, 2022, the Court heard oral argument on the outstanding motions. ECF No. 32. A written order follows.

### III.    FACTUAL BACKGROUND

#### a.  Undisputed Facts

The Court finds the following facts to be undisputed. During the course of construction activities at 7760 Haven Street, Las Vegas, Nevada, a porch covering collapsed on top of a construction worker, Wilfrido Simon-Perez, and killed him. Simon-Perez was not employed by D & T DESIGN CONTRACTORS, LLC. Simon-Perez was not compensated by D & T Design Contractors, LLC regarding the work he performed at 7760 Haven Street, Las Vegas, Nevada, 89123 ("Subject Property") in July 2019.

D & T Design Contractors, LLC installed cabinets and countertops in the kitchen and bathrooms at the Subject Property. They did not perform any work for or provide materials for the porch canopy or any element of the exterior of the Subject Property. Further, they did not determine the design of the construction of the wood canopy porch, nor are they licensed to perform such work. PCIC issued a General Liability Policy, Policy Number PCA5002-PC305069 (hereinafter referred to as "Policy"), to D & T Design Contractors, LLC, which contained the following declaration:

> Damages resulting from work or operations which are not specific and customary to the description of operations listed on the application or classification shown, or otherwise listed in the application used to bind, are not covered under this policy.

See Commercial General Liability Policy Declarations, ECF No. 25-6. The policy contains Commercial General Liability Coverage which contained the following provision:

**Insuring Agreement:**

a. We will pay those sums that the insured becomes legally obligated to pay as "damages"

- 2 -

for "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend you, the Named Insured, against any "suit" seeking "damages" to which this insurance applies, and which is timely reported to us as provided hereunder. Except as otherwise provided in this policy, we have no duty to defend any other insured. Our duty to defend you is further limited as provided below and in the exclusions made part of this policy. We will have no duty to defend any insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply and/or which is not timely reported to us.

See Id. The policy also contains the following exclusions:

**Collapse**

Any "claim" or "suit" for "bodily injury" or "property damage" arising out of, resulting from, caused by, contributed to, alleged to be, or in any way related to, in whole or in part, from the collapse of a building or any part of a building, including but not limited to walls, ceilings, roofs, and/or floors. For purposes of this exclusion, the term "collapse" shall be defined as an abrupt or sudden falling down or caving in of a building or any part of a building or structure with the result that the building or part of the building or structure cannot be used, utilized for its intended purpose, or occupied for its intended purpose. . . .

**Injury or Damage to Day Laborers**

Any "claim" or "suit" for "bodily injury" or "property damage" sustained by day laborers or other individuals who are not specifically identified on the insured's employment records and are not compensated as employees of the insured through a payroll/staffing or PEO service under contract with the insured. . . .

**Non-Compliance with Safety Regulations**

"Bodily injury", "property damage" or "personal and advertising injury arising out of, alleged to be, or in any way related to any work of any insured, or any contractor or subcontractor (including material suppliers) working for or on behalf of any insured, that does not meet federal, state, or local laws, rules, regulations, or standards, including but not limited to standards promulgated by the Occupational Safety and Health Administration (OSHA), and any and all similar laws, rules regulations and standards. For the purpose of this exclusion, if the insured is cited and fined by OSHA or any similar regulatory agency for a violation of any federal, state, or local laws, rules, regulations, or safety standards related to the "occurrence" giving rise to the purported damage or injury, the insured shall be deemed to have not met the applicable standard as set forth above. . . .

**Roofing Operations**

"Bodily injury", "property damage" or "personal and advertising injury" caused by, arising out of, or resulting from, in whole or in part, any roofing operations performed by or on behalf of any insured. As used in this exclusion, "roofing operations" includes all work and services performed on or in connection with any roof or covering of any structure or structures, and/or products provided in connection with any roof or covering of any structure. . . .

Id. The State of Nevada Department of Business and Industry Division of Industrial Relations Occupational Safety and Health Administration (OSHA) investigated the July 14, 2019 incident and found the following:

> The employee and his coworker were constructing a 40 x 18 ft. wooden canopy that abutted the large building in the southeast corner of the property. . . .One worker was killed when the canopy structure collapsed;. . . .The employee was cleaning up materials and debris underneath the wooden canopy when the structure collapsed.

OSHA Investigation Summary, ECF No. 25-9. OSHA also concluded that the structure weighed 10,000 pounds. OSHA issued a citation setting forth various violations related to this incident. The patio structure was then dismantled and discarded. Figure 1, below is a photograph of the collapsed structure at the scene:



**Figure 1**. ECF No. 25-14.

### b. Disputed Facts

Defendants argue that the following facts are in dispute: (1) whether collapse was due to non-compliance with safety regulations, (2) whether or not Mr. Perez was a day laborer paid by

D&T Design, (3) whether D&T was involved in other tasks apart from the installation of kitchen and bathrooms, (4) whether a "patio" cover is akin to a "building" or a "roof."

## IV.     LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986). The substantive law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.  Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage.  Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V.     DISCUSSION

Plaintiff argues that declaratory relief is appropriate because there is no coverage for the underlying lawsuit under any of the following exemptions in the Commercial General Liability Coverage Policy: (1) the "collapse" exemption, (2) the injury or damage to day laborers exemption,

1   (3) the non-compliance with safety regulations exemption, (4) the roofing operations exemption.

2   Defendants argue that there are genuine disputes of material fact related to each of these

3   exemptions and the case must proceed to a jury trial in order to resolve these disputes. The Court

4   finds that this case may be resolved on the undisputed facts.

5

6        a.  **Nevada Insurance Contract Law**

7        Generally, interpretation of an insurance contract is a question of law, to be decided by the

8   court. Shelton v. Shelton, 78 P.3d 507, 510 (Nev. 2003), Grand Hotel Gift Shop v. Granite St. Ins.,

9   839 P.2d 599, 602 (Nev. 1992). Under Nevada law, the terms of a contract must be given their

10  plain meaning. See Traffic Control Servs. v. United Rentals Northwest, Inc., 87 P.3d 1054 (Nev.

11  2004). In interpreting an insurance policy, specifically, courts must examine the language from the

12  viewpoint of one not trained in law or insurance, "giving the terms their plain, ordinary and popular

13  meaning." McDaniel v. Sierra Health & Life Ins. Co., 53 P.3d 904, 906 (Nev. 2002). Any

14  ambiguity in the terms of an insurance contract shall be resolved in favor of the insured and against

15  the insurer. Farmers Ins. Exch. v. Young, 832 P.2d 376, 377 (Nev. 1992).

16

17       Courts must consider not merely the language of the policy, but also the intent of the

18  parties, the subject matter of the policy, and the circumstances surrounding its issuance in order to

19  implement the reasonable expectations of the insured. See Nat'l Union Fire Ins. Co. of State of Pa.,

20  v. Reno's Executive Air, Inc., 682 P.2d 1380, 1383-1384 (Nev. 1984) Sullivan v. Dairyland Ins.

21  Co., 649 P.2d 1357 (Nev. 1982).

22

23       b.  **The Day Laborer Exemption**

24       Plaintiff argues that they are exempt from covering the underlying suit because Mr. Perez

25  was the type of worker who falls under the "day laborer" exemption in the policy. Defendant

26

27

28

argues that it is not clear whether Mr. Perez was a "day laborer" and that whether or not he was raises a genuine issue of material fact that precludes summary judgment.

However, it is clear to the Court that a straightforward application of the plain language of the insurance policy exemption precludes coverage for Mr. Perez. The relevant exemption states:

> <u>Injury or Damage to Day Laborers</u>
> Any "claim" or "suit" for "bodily injury" or "property damage" sustained by day laborers *or other individuals who are not specifically identified on the insured's employment records and are not compensated as employees of the insured through a payroll*/staffing or PEO service under contract with the insured. . . .

See ECF No. 25-6 (italics added). Therefore, injury occurring to an individual who is either a "day laborer" or who (1) is not specifically identified on the insured's employment records and (2) is not compensated as an employee of the insured through payroll is exempt from coverage. It is clear from the undisputed facts in the record that Mr. Perez was neither specifically identified on the insured's employment records nor compensated for this job as an employee of the insured through its payroll. <u>See</u> Plaintiff's Exhibit No 4, ECF No. 25-4 at 3,5 ("Admission No. 5: Admit that Wilfrido Simon Perez was not employed by D&T Design Contractors, LLC on July 14, 2019. Answer to Admission No. 5: Admit…Admission No. 12: Admit that Wilfrido Simon Perez was not compensated by D&T Design Contractors, LLC regarding work performed at 7760 Haven Street, Las Vegas, Nevada, 89123 in July 2019. Answer to Admission No. 12: Admit."); <u>see also</u> Plaintiff's Exhibit No 5, ECF No. 25-5 at 3 ("Interrogatory No. 3: Was Wilfrid Simon Perez employed by D&T Design Contractors, LLC on July 14, 2019? Answer to Interrogatory No. 3: No.). Defendants have not successfully identified facts showing the existence of a genuine issue for trial. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Instead, they have either relied on only the "day laborer" language, ignoring the "or" language in the exception, or improperly relied on arguments raised in the underlying case which are not relevant to the inquiry here.

1   Because Mr. Perez falls under the "injury or damage to day laborers" exemption, the underlying

2   suit is not covered by the insurance policy at issue here.

3          c.   **The Duties to Defend and Indemnify**

4
5          Under Nevada law, an insurer bears a duty to defend whenever it ascertains facts which

6   give rise to the potential of liability under the policy. United Natl Ins. Co. v. Frontier Ins. Co., 99

7   P.3d 1153, 1158 (Nev. 2004). If there is any doubt about whether the duty to defend arises, this

8   doubt must be resolved in favor of coverage. Id.

9
10         Because Mr. Simon-Perez clearly falls under the day laborer exemption in the policy based

11  upon the undisputed facts in this case, the facts do not and could not give rise to liability in this

12  case. Because the insurer ascertained facts that they understood to preclude coverage, they do not

13  have a duty to defend. Here, out of an abundance of caution, Plaintiffs acted in accordance with

14  Nevada law by defending Defendant D&T in the first instance. Nevada law has set forth that the

15  remedy for the insurer in situations where they are unsure of an ultimate determination under the

16  duty to defend is to defend the insured with the express reservation that it does not waive any right

17  to later deny coverage based on the terms of the policy. Century Sur. Co. v. Andrew, 134 Nev.

18  819, 826 (Nev. 2018), (citing Woo v. Fireman's Fund Ins. Co., 164 P.3d 454, 460 ("If the insurer

19
20  is uncertain of its duty to defend, it may defend under a reservation of rights and seek a declaratory

21  judgment that it has no duty to defend. Although the insurer must bear the expense of defending

22  the insured, by doing so under a reservation of rights and seeking a declaratory judgment, the

23  insurer avoids breaching its duty to defend and incurring the potentially greater expense of

24  defending itself from a claim of breach.") (internal citations omitted)). It is proper for the insurer

25  in this situation to later seek a declaratory judgment clarifying the requirements of coverage as a

26  matter of law. Id. Here, Plaintiff PCIC has acted properly by assigning counsel to defend D&T

27
28

Design Contractors and Zhiqiang Weng in the underlying suit. <u>See</u> Plaintiff's Complaint, ECF No. 1, ¶ 19. However, this order now clarifies that Plaintiff does not have a duty to defend in the underlying case.

The duty to indemnify arises when an insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy or when the resulting loss or damage "actually falls" within a policy's coverage. <u>Century Surety Co. v. Andrew</u>, 432 P.3d 180, 184 (Nev. 2018) (internal citations omitted). As discussed at length above, the underlying action does not give rise to a claim under the policy or "actually fall" within a policy's coverage because of Mr. Simon-Perez's status under the exemption. Accordingly, Plaintiff does not have a duty to indemnify.

## VI.    CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 25) is GRANTED in full consistent with this order. Plaintiff has neither a duty to defend, nor a duty to indemnify the insured in the underlying case.

The Clerk of the Court is directed to enter judgment in favor of the Plaintiff and close this case.

**DATED**: <u>March 27, 2022</u>.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

- 9 -